**ORIGINAL**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

CV 19-3576

| | |
|---|---|
| OMAR W. ROSALES | § |
| | § |
| **Plaintiff** | § |
| | § |
| VS. | § |
| | § |
| SARA BRONFMAN-IGTET | § |
| | § |
| **Defendant** | § |

CIVIL ACTION NO. 1:19-CV-

BRODIE, J.

MANN. M.J.

RECEIVED
JUN 1 4 2019
PRO SE OFFICE

## COMPLAINT

TO THE HONORABLE U.S. DISTRICT JUDGE:

**COMES NOW**, Plaintiff OMAR W. ROSALES and brings this cause of action against SARA BRONFMAN-IGTET, ("MS. BRONFMAN-IGTET"). MS. BRONFMAN-IGTET was named in testimony from 1:18-CR-204, <u>USA v. Raniere</u>, as part of the criminal enterprise known as the NXIVM and ESP, INC., organization. MS. BRONFMAN-IGTET was noted to be one of the early founders and provided funding, jet travel, and visits of celebrities to promote the criminal enterprise. MS. BRONFMAN-IGTET is also the Defendant in a class action lawsuit filed in Kings County Superior Court to obtain refunds for students who took NXIVM classes known as 'Intensives.'

After the class action lawsuit was filed, MS. BRONFMAN-IGTET attempted to extort and blackmail lead counsel OMAR W. ROSALES to drop the lawsuit by threatening a grievance with the State Bar of New York and attempting to obtain PLAINTIFF'S personal information in order to threaten, harass, and intimidate the PLAINTIFF.

Mr. Rosales respectfully shows that Defendant's actions constitute extortion and blackmail, and Defendant is liable for racketeering, prima facie tort, and tortious

1

interference with contract.

## STATEMENT OF CLAIM

1.      Mr. Rosales brings this action for declaratory and injunctive relief, attorney's fees, costs, litigation expenses, economic damages, and punitive damages against Defendant for a Federal claim of racketeering under 18 U.S.C. §1962(b) and state law claims of prima facie tort and tortious interference with contract.

2.      Defendant directed her attorneys to extort and blackmail Mr. Rosales to drop the class action lawsuit filed against her. Defendant is currently residing in Provence, France in order to avoid criminal prosecution for her role in the NXIVM and ESP enterprise. In that trial, <u>USA v. Raniere</u>, 1:18-CR-204, EDNY, five of the six named Defendants have pled guilty to various charges including identity theft, harboring an illegal alien, racketeering conspiracy, and racketeering. The head of the organization, Keith Raniere is currently on trial for multiple felonies.

3.      In the trial, multiple witnesses named DEFENDANT SARA BRONFMAN-IGTET as conspiring to have enemies and critics (including Senators, District Attorneys, and Federal Judges) investigated and enemies indicted. In fact, the Defendant inquired how much it would cost to bribe the New York Attorney General to begin criminal prosecution of her enemies. Continuing this habit, practice, and custom, DEFENDANT hired attorney John McDonough of Cozen O'Connor to blackmail and extort PLAINTIFF into dropping the class action lawsuit against her. McDonough threated PLAINTIFF with a Bar grievance, filed a grievance, then attempted to obtain PLAINTIFF'S personal identity information through an illegal subpoena.

4.      Based on these facts, and testimony during the criminal trial,

2

DEFENDANT is liable to PLAINTIFF for racketeering under 18 U.S.C. §1962(b), prima facie tort, and tortious interference with contract.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and 18 U.S.C. §1964(c), civil remedies for racketeering, and 28 U.S.C. §1332, diversity of citizenship, as Plaintiff is a resident of Texas and Defendant is a resident of New York and France. The amount in controversy exceeds $75,000. Mr. Rosales further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. §1367(a), to consider his state law claims.

6.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), as the events complained of transpired in the City of Brooklyn, Kings County, New York where the blackmail and extortion occurred. The Court also has personal jurisdiction over the Defendant due to her participation in the racketeering enterprise that operated in New York State.

## PARTIES

7.      PLAINTIFF OMAR W. ROSALES is a Disabled Veteran, former Captain in the Marine Corps, and graduate of Vanderbilt University with Honors and The University of Texas School of Law. Mr. Rosales has practiced law for almost 15 years, has litigated multiple class action lawsuits, is on the American Bar Association Class Action & Derivative Suit Committee, and is a six-year member of the Texas Bar College. Plaintiff is a resident of Texas with an office in New York, New York. Mr. Rosales is also a regular contributor to The Frank Report and wrote the book 'American Cult:

NXIVM Exposed,' the first novel about NXIVM.

8.      DEFENDANT SARA BRONFMAN-IGTET is one of the founding members and promoters of the NXIVM and ESP, Inc., organization that has been identified as a Racketeering Enterprise by the U.S. Attorney's Office, EDNY. This organization has been linked to an on-going crime spree in New York State and various officials and senior members have pled guilty to charges including racketeering, racketeering conspiracy, identity theft, and harboring of an illegal alien. Defendant recruited her own sister Clare Bronfman into the organization. On April 19, 2019, Clare Bronfman pled guilty to charges of identity theft and harboring an illegal alien as part of her illegal activities with the NXIVM criminal enterprise in USA v. Raniere, 1:18-CR-204, EDNY. Clare Bronfman also agreed to forfeit $6 Million dollars for her crimes.

Defendant is currently hiding in Provence, France to avoid criminal prosecution for activities related to NXIVM. Defendant's address is: Domaine des Andeols, Les Andeols, 84490 Saint-Saturnin-les-Apt, Provence, France.

## NOTICE OF RELATED CASE

9.      The criminal trial of Keith Raniere is ongoing in USA v. Raniere, 1:18-CR-204, EDNY. The Court has heard evidence of the previous extortion attempts by the criminal enterprise known as NXIVM. Five of the Six company officers have pled guilty in this case. The Defendant in the instant case, SARA BRONFMAN-IGTET has been named in the criminal case and is the sister of one of the Defendants that pled guilty.

10.     PLAINTIFF requests that this case be transferred to the court of the presiding judge in 1:18-CR-204, USA v. Raniere as the Court has heard copious testimony about the racketeering, predicate acts, and interworking of the criminal

enterprise.

## GUILTY PLEAS IN RELATED CASE

| Name | Criminal Case No. | Court | Guilty Pleas |
|------|-------------------|-------|--------------|
| Nancy Salzman | 1:18-CR-204 | EDNY | Pled Guilty to Racketeering Conspiracy |
| Clare Bronfman (sister) | 1:18-CR-204 | EDNY | Identity theft, Harboring an Illegal alien |
| Kathy Russell | 1:18-CR-204 | EDNY | Visa Fraud |
| Lauren Salzman | 1:18-CR-204 | EDNY | Pled Guilty to Racketeering Conspiracy, Racketeering |
| Allison Mack | 1:18-CR-204 | EDNY | Pled Guilty to Racketeering Conspiracy, Racketeering |

## FACTS

11.     PLAINTIFF filed a class action lawsuit against DEFENDANT SARA

BRONFMAN-IGTET in Kings County Supreme Court, styled Martinez v. Bronfman,

517921/2018 on 9/4/2018. The purpose of the lawsuit was to obtain tuition refunds for

consumers who were defrauded into purchasing the NXIVM classes known as

'Intensives' that were a source of funding for the NXIVM criminal enterprise. Defendant

participated in promoting the organization and designing the marketing materials to

include false claims about Keith Raniere and an omission where the materials failed to

mention that Raniere was under a Consent Order and Decree from the New York

Attorney General's Office to never again operate another multi-level marketing (MLM)

business in the State of New York.

12.     At the first hearing on 1/6/2019, Defendant's attorney John Joseph

McDonough, NY Bar Reg. 1690882, walked aggressively into Plaintiff's right side and

loudly yelled, "I'm going to subpoena your Bar application and get you disbarred,"

unless Rosales would drop the case. After Plaintiff refused to drop the case, McDonough

carried out his threat and filed a grievance against Mr. Rosales. McDonough also submitted various subpoenas to third-parties (that falsely named Mr. Rosales as a Defendant) to obtain PLAINTIFF'S personal identity information including his social security number and driver's license number.

     13.    On 1/17/2019, John McDonough, acting on the orders of Defendant, sent a subpoena to Defendant's landlord. The subpoena is included as **Exhibit 1** and a portion is reproduced below:

[Continued on Next Page]

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
---------------------------------------------------------------X
ISABELLA MARTINEZ and GABRIELLA
LEAL, Individually and on behalf of other persons
similarly situated,                                                     Index No.: 517921/2018

                                              Plaintiff,

                                                              **SUBPOENA DUCES TECUM**

        -vs.-

SARA BRONFMAN-IGTET,

                              Defendant.
---------------------------------------------------------------X

                **THE PEOPLE OF THE STATE OF NEW YORK**


TO:    Law Firm Suites
       11 Broadway
       Suite 615
       New York, NY 10004


*Greetings*:

        **WE COMMAND YOU,** that all business and excuses being laid aside, you furnish the

below-mentioned documents to the law firm of Cozen O'Connor, 45 Broadway Atrium, Suite

1600, New York, NY 10006-3792 on the 20th day of February, 2018:

                    •    **Copy of the Rosales Law Firm, LLC's lease or rental agreement with
                         Law Firm Suites (or whatever that document may be named), or such
                         other document as may exist that evidences when The Rosales Law
                         Firm's occupancy of a rental suite at 11 Broadway began.**


        **YOUR FAILURE TO ATTEND WILL RESULT IN YOU BEING GUILTY OF**

**CONTEMPT OF COURT AND WILL SUBJECT YOU TO LIABILITY FOR ALL**

**LOSSES AND DAMAGES SUSTAINED THEREBY TO THE PARTY AGGRIEVED**

**Fig. 1 – Illegal Subpoena Sent to Obtain Plaintiff's Personal Information, Ex 1**


        14.     Of particular note is that Mr. Rosales is not a party to the class action

lawsuit, is not subject to any subpoena created by McDonough, and was never provided a

copy of the subpoena. The subpoena also included the following language: "YOUR FAILURE TO ATTEND WILL RESULT IN YOU BEING GUILTY OF CONTEMPT OF COURT..."

15.     Thus, the subpoena was misleading and illegal as it was sent to obtain information on an individual that was not a party to the case and contained a threat that the recipient would be found in contempt of court if the information was not provided.

16.     As the Court is aware, an attorney cannot find a person in contempt of court. Only a judge can find a person in contempt, and only after a hearing. Thereby, the subpoena was another illegal attempt to intimidate, harass, research, and extort the Plaintiff.


**Custom and Practice of NXIVM to Create Files on Enemies for Extortion, RICO Predicate Acts**

17.     During the trial testimony, in criminal case 1:18-CR-204, USA v. Raniere, it was revealed that creating files on enemies and critics in order to commit blackmail and extortion was a common practice, habit, and custom of the NXIVM and ESP, Inc., criminal enterprise. The government alleged this as one of the RICO predicate acts.

18.     In fact, multiple witnesses testified that this was a common occurrence including attorney Stephen Herbits. Mr. Herbits has worked on the staff of the U.S. House of Representatives, the Senate, and the Pentagon. He was also a Special Assistant to the Secretary of Defense. On 5/16/2019, Herbits was questioned by Assistant U.S. Attorney Mark Lesko in 1:18-CR-204, USA v. Raniere. Herbits was asked about his experiences with Sara and Clare Bronfman and testified to the following:

```
12  BY THE COURT::
13  Q    Let's talk about the Attorney Generals, what did they
14  want you to ask of the Attorney Generals?
15  A    I believe they were encouraging me to ask them to do the
16  prosecution of --
17  Q    Of who?
18  A    Of Ross.  And I don't believe it stop there, but I don't
19  have documents to remind me of that.
20  Q    These were the Attorney Generals from New York and New
21  Jersey?
22  A    New York and New Jersey.
23  Q    Did you actually contact the attorney generals for New
24  York and New Jersey?
25  A    No.
```

*Rivka Teich CSR, RPR, RMR, FCRR*
*Official Court Reporter*

HERBITS – CROSS – MR. LESKO                    1332

```
1  Q    Why not?
2  A    Because I felt the request was inappropriate and frankly
3  preposterous.
4  Q    Did Sarah and Clare Bronfman ask you to contact any other
5  prosecutors?
6  A    Two prosecutors in the larger Albany area, we had a long
7  conversation about that.  It was on the phone.  Because they
```

*******

```
9   A    She's talking to me, because she continued to believe

10  that I could go to her father and get this taken care of.

11  Q    Next paragraph, last sentence, this is a paragraph

12  dealing with Rick Ross, I also believe you could rapidly

13  facilitate the proper Indictment and conviction of Rick Ross

14  and Joseph O'Hara.

15        What is your understanding of what Clare Bronfman is

16  saying there?

17  A    It's the same messages going on at that point for three

18  years, four years.  And I never changed my position.  I was

19  not going to get involved.  I have never spoken to the man,

20  never spoken to anybody in his office.  It just wasn't

21  something I was going to do.

22  Q    Was it your understanding that Clare Bronfman wanted Rick

23  Ross and Joseph O'Hara to get indicted?

24  A    Yes.

25  Q    Let's turn to your response.  You start out by saying,
```

*Rivka Teich CSR, RPR, RMR, FCRR*
*Official Court Reporter*

*******

HERBITS - DIRECT - MR. LESKO                    1356

1    DIRECT EXAMINATION (Continued)

2    BY MR. LESKO:

3    Q    I'm going to show you Government's 1493R, second page

4    contains no contents.

5            First page starts with a December 4, 2008 email from

6    the Clare Bronfman to you; is that correct?

7    A    Yes.

8    Q    So in that email, Clare Bronfman says:  The Ross camp

9    needs to be fearful, back down and look to fix the damage they

10   have done.  The thought of criminal charges may help inspire

11   this.

12           Is this common along the same lines as other

13   comments that you've made about Rick Ross?

14   A    Yes.

15   Q    It says:  I know you are incredibly resourceful and have

16   the intelligence to figure this out.

17           Again, is this similar to the comments you discussed

18   previously?

19   A    Yes, I mean they were still asking me to do things that I

20   didn't think improper.


*******



```
15   Q     Okay.  So let's go to the next email which starts at the
16   bottom of page 1 of 1494R.
17         And that's an email dated December 6, 2008 and it's
18   from Clare Bronfman to you; is that right?
19   A     Yes.
20   Q     And it reads:  I'm sorry I was not clear.  I do not care
21   how or what you do with respect to the results needed for
22   Ross.  I just mentioned the indictment thing because I've been
23   told by numerous officials Ross is very indictable.  But white
24   collar crimes often needs political clout.  I understand you
25   may not have or want to use/do this.
```

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

```
                    HERBITS - DIRECT - MR. LESKO          1358
1          What was your understanding of what Clare Bronfman
2   was saying there?
3   A    That's both imploring me to do it anyway, and sort of
4   gently saying that, you know, if I won't, I won't.
```

**Fig. 2 – Transcript** of testimony by attorney Stephen Herbits on 5/16/2019, from 1:18-CR-204, USA v. Raniere, indicating that Sara and Clare Bronfman wanted attorney Stephen Herbits to get NXIVM enemies indicted.

19.     The FBI also provided crime scene photographs after their raid on Nancy Salzman's house. Ms. Salzman was the President of NXIVM, one of the criminal defendants in 1:18-CR-204, and pled guilty to racketeering conspiracy. In one of the photographs, a clear plastic box is seen with multiple files on NXIVM enemies:



**Fig. 3 – FBI Photo of File box** on Enemies found in Nancy Salmzan's Home.

20.      An additional witness in the criminal case, Lauren Salzman, testified that private investigators, research firms, and attorneys were hired to 'dig up dirt' on the critics and enemies of NXIVM. These individuals included U.S. Senators, Federal Judges, State legislators, journalists, and others. Lauren Salzman indicated this was a common practice, habit, and custom. The targets included Rick Ross, Roger Stone, Federal Judges Gary Sharpe, Randolph Treece, Robert Littlefield, Thomas McAvoy, Dennis Cavanaugh, and Mark Falk. And reporter James Odato and publisher George Hearst. These names correspond to FBI photographs of the plastic file box taken at Nancy Salzman's home. In addition to the files, FBI investigators found over $500,000 cash hidden in shoeboxes at Salzman's residence.

**Attorney for Defendant Advertises himself as a Fixer for the Rich**

21.     John J. McDonough, the attorney for Sara Bronfman-Igtet in the civil class

action case, has no experience in class action litigation. However, he does advertise

himself as a 'Fixer' for rich and wealthy clients, willing to do 'what it takes to win cases'.

By his own admission, McDonough brags about operating outside of the law for wealthy

clients:



The global head of claims for one of the world's largest insurers appointed John to serve on an elite task force of just seven
trial attorneys who lead the company's most critical litigation. High-net-worth individuals and celebrities hire John to resolve
private commercial litigation when confidentiality and discretion are nearly as important as the ultimate resolution.

**Fig. 4 – Sara Bronfman's attorney John McDonough** advertises himself as a 'Fixer'
for High-Net-worth individuals, willing to operate outside of the law.


**Attorney for Defendant Previously Accused of Misconduct**

22.     In 2011, John McDonough was caught engineering a scheme to create a

mistrial and falsely have the presiding judge recused. McDonough was defending Duane

Reade in <u>Shirley Miller vs. Duane Reade</u>, Index 11358/09, Kings County Supreme Court.

The case involved a Duane Reade truck that had run over a victim, left the scene, and left

the victim near death.

23.     Realizing that his client had a losing case, McDonough caused a mistrial

through repeated delays including phony doctor's appointments and overseas travel to

China and was reprimanded by the trial court. McDonough and his employee Eric Berger

then fabricated a story that the presiding judge, the Hon. Arthur Scheck of the Kings

County Supreme Court, called McDonough a 'Piece of Shit' in order to have Judge

Scheck recused.

24.     The Presiding Judge denied that this inflammatory comment was made.

**Exhibit 2**. Other attorneys in the courtroom also denied that this comment was made.[1]

This indicated that the Judge never made this statement and the entire episode was a

sham and fraud upon the court created by McDonough to remove the Presiding Judge.

25.     As the appeal was progressing, the case was quickly settled by Duane

Reade. However, McDonough and Berger had been caught trying to cheat the justice

system in order to win a case for their client.

26.     The same attorneys, McDonough and Berger, are the attorneys hired by

Sara Bronfman-Igtet to defend the class action.


**Clare Bronfman's Attorneys Also Implicated in a Blackmail Attempt**

27.     In the criminal trial to dismantle the NXIVM crime organization,

Defendant Clare Bronfman's own attorneys were indicted and named in a conspiracy to

extort and blackmail another entity for Clare Bronfman's benefit.

28.     To defend her against the criminal charges, Clare Bronfman hired a bevy

of attorneys and fired them until she hired Michael Avenatti and Mark Geragos. Avenatti

---

1 – On August 14, 2012, Attorney Evan Torgan submitted an affidavit that refuted all of the
claims made by John McDonough and Eric Berger. Torgan surmised that McDonough's
actions were simply a scheme to benefit his client and win the case since: 1) McDonough
created the mistrial in the first place and 2) the evidence against his client Duade Reade was
overwhelming.

created a scheme on behalf of Clare Bronfman to extort Nike, Inc., by: 1) giving information about alleged criminal activity of Nike to the U.S. Attorney's Office, 2) in exchange for dropping all charges against Clare Bronfman. This is known as a third-party cooperation agreement.

29.     Avenatti was indicted on 5/22/2019 and charged with extortion for his efforts on behalf of Ms. Bronfman. His co-counsel and Clare Bronfman's attorney in criminal case 1:18-CR-204, Mark Geragos, was named as Co-Conspirator 1 (CC-1) in the new indictment 1-19:CR-373, USA v. Avenatti. **Exhibit 3**.

30.     The activities of Avenatti, Geragos, and McDonough on behalf of the Bronfman sisters show a pattern, habit, custom, and practice of engaging in extortion and blackmail in order to defend the Bronfman sisters and intimidate enemies.

31.     The same pattern of extortion was conducted against Plaintiff Omar W. Rosales, lead counsel in the class action lawsuit against Sara Bronfman-Igtet. Mr. Rosales is also a target of the NXIVM criminal enterprise because he is a regular contributor to The Frank Report, a blog exposing NXIVM, and the author of 'American Cult: NXIVM Exposed,' the first novel about NXIVM.

## I. FIRST CAUSE OF ACTION – RACKETEERING
## 18 U.S.C. §§1962(b), 1964(c)

32.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

### The Defendant

33.     Sara Bronfman-Igtet is a 'person' as defined by 18 U.S.C. §1961(3).

**Predicate Act – Mail and Wire Fraud**

34.     Beginning in 2007, and continuing today, Defendant Sara Bronfman-Igtet and her sister Clare Bronfman were Board Members and senior leaders of the NXIVM and ESP, Inc., criminal organization, sat on board meetings, and were decision makers for the criminal enterprise. The organization illegally obtained funds by selling classes known as 'Intensives' by making false claims about the Program Developer Keith Raniere[2] and omitting the fact that Raniere was under a Consent Order and Decree from the New York Attorney General's Office to never again operate another Multi-level marketing business in the State of New York. The classes were sold to consumers via mail and wires. The communications crossed interstate lines. Money was sent to Defendant's enterprise via mail and wire.

35.     The funds obtained via mail and wire were used to operate the criminal enterprise, make political donations, and pay various members of law enforcement, attorneys, state government officials, and state elected officials to go after, indict, harass, and arrest critics including Rick Ross, Joseph O'Hara, and the Plaintiff.

36.     Defendant paid her attorney John McDonough using the ill-gotten gains from the racketeering scheme. The same ill-gotten gains were obtained using mail and wire fraud. Defendant paid her attorney through the use of mail and wires.

**Predicate Act – Tax Evasion**

37.     One of the tenets of the criminal enterprise was not to pay income taxes.

---

2 – In marketing materials developed and distributed by Sara and Clare Bronfman, the pair claimed that Keith Raniere: a) was one of the World's Smartest Men; b) began talking in complete sentences by age one; c) was an East Coast Judo Champion at age twelve; d) tied the New York State record for the 100-yard dash in High School; and e) had a very rare problem-solving ability that allowed him to create a curriculum to assist others with their business projects.

This message was repeated in presentations to membership. On 5/31/2019, accountant and government witness James Loperfido testified in the criminal trial 1:18-CR-204, USA v. Raniere, that the organization played videos that 'taxes were unconstitutional' and that members should not pay taxes.

38.     Additional testimony by government witness Danielle P. on 5/23/2019 noted that she was instructed to: 1) collect all cash that was mailed by students to purchase classes, 2) place it in a drawer, 3) do not note the cash in accounting records, 4) instead write in accounting ledgers that NXIVM gave a scholarship to the sender of the cash.

39.     These activities constitute tax evasion and were done at the behest of the NXIVM Board of Directors including the Defendant. The additional monies that were saved were used to fund criminal operations including extortion attempts, and paying off officials, as noted herein.

40.     Defendant used the proceeds of her enterprise, obtained through tax evasion and the creation of over 100 shell companies, to operate NXIVM and ESP, Inc., and to pay for legal fees to carry out the instant extortion attempt against Plaintiff.

**Predicate Act – Extortion, use of Mail and Wires to Extort, Conspiracy to Commit Extortion**

41.     Beginning in 2008, and continuing today, Defendant Sara Bronfman-Igtet and her sister Clare Bronfman participated in a scheme to give political donations and pay various members of law enforcement, attorneys, state government officials, and state elected officials to go after, indict, harass, and arrest critics including Rick Ross, Joseph

O'Hara, and the Plaintiff.

42.     The Defendant made extensive use of the U.S. mails and wires in violation

of 18 U.S.C. §1341 (mail fraud) and 18 U.S.C. §1343 (wire fraud) in order to perpetrate

this scheme. On 5/16/2019, attorney and government witness Stephen Herbits testified

that Sara Bronfman-Igtet and Clare Bronfman used a wire communication (email over

telephone line) to instruct Herbits to develop a plan to get NXIVM critics Rick Ross and

Joseph O'Hara indicted.

43.     Herbits gave the following testimony:

```
                         HERBITS - DIRECT - MR. LESKO          1356
 1    DIRECT EXAMINATION (Continued)
 2    BY MR. LESKO:
 3    Q    I'm going to show you Government's 1493R, second page
 4    contains no contents.
 5            First page starts with a December 4, 2008 email from
 6    the Clare Bronfman to you; is that correct?
 7    A    Yes.
 8    Q    So in that email, Clare Bronfman says:  The Ross camp
 9    needs to be fearful, back down and look to fix the damage they
10    have done.  The thought of criminal charges may help inspire
11    this.
12            Is this common along the same lines as other
13    comments that you've made about Rick Ross?
14    A    Yes.
15    Q    It says:  I know you are incredibly resourceful and have
16    the intelligence to figure this out.
17            Again, is this similar to the comments you discussed
18    previously?
19    A    Yes, I mean they were still asking me to do things that I
20    didn't think improper.
```

*******

```
15   Q    Okay.  So let's go to the next email which starts at the
16   bottom of page 1 of 1494R.
17        And that's an email dated December 6, 2008 and it's
18   from Clare Bronfman to you; is that right?
19   A    Yes.
20   Q    And it reads:  I'm sorry I was not clear.  I do not care
21   how or what you do with respect to the results needed for
22   Ross.  I just mentioned the indictment thing because I've been
23   told by numerous officials Ross is very indictable.  But white
24   collar crimes often needs political clout.  I understand you
25   may not have or want to use/do this.
```

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

HERBITS - DIRECT - MR. LESKO            1358

```
1        What was your understanding of what Clare Bronfman
2   was saying there?
3   A    That's both imploring me to do it anyway, and sort of
4   gently saying that, you know, if I won't, I won't.
```

44.    Herbits refused to participate in the extortion scheme. However, based on the files located by the FBI in the residence of NXIVM President Nancy Salzman – the criminal enterprise engaged in extortion and conspiracy to commit extortion by obtaining files on critics and perceived enemies of NXIVM.

45.    The files included information on Rick Ross, Roger Stone, Federal Judges Gary Sharpe, Randolph Treece, Robert Littlefield, Thomas McAvoy, Dennis Cavanaugh, and Mark Falk. And reporter James Odato and publisher George Hearst. These names

20

correspond to FBI photographs of the plastic file box taken at Nancy Salzman's home. In addition to the files, FBI investigators found over $500,000 cash hidden in shoeboxes.



**Fig. 3 – FBI Photo of File box** on Enemies found in Nancy Salmzan's Home.

46.    Defendant Sara Bronfman-Igtet continued this extortion scheme against Plaintiff by seeking to obtain his personal identity information via the use of an illegal subpoena sent to his landlord. This illegal subpoena was sent via U.S. Mail and included a check to pay for fees. **Exhibit 4**. The check was drawn from a U.S. bank and is payable via wire communications. Defendant used mail and wires to carry out the extortion.

47.    Defendant Sara Bronfman-Igtet continued this extortion scheme against Plaintiff by having her attorney threaten to obtain Plaintiff's application to the New York State Bar and get him disbarred unless he dropped the class action lawsuit against Defendant. Plaintiff has received correspondence from the Grievance Panel via U.S. Mail

and wire communication. Thus, Defendant completed her extortion using mail and wires.

**Injury**

48.      The Defendant's violations of 18 U.S.C. §1962(b) proximately caused the Plaintiff to suffer damages and losses described herein. Notably, the Plaintiff has incurred legal fees in excess of $20,000 and is expected to incur legal fees that may exceed $150,000.

## II. SECOND CAUSE OF ACTION
## PRIMA FACIE TORT

49.      Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

50.      The elements of Prima Facie Tort in the state of New York are as follows:

Plaintiff claims damages on the basis that defendant intended to cause plaintiff harm and succeeded in doing so. Specifically,

    a.      That defendant intentionally did some act;

    b.      That defendant intended that the act would cause harm to the plaintiff;

    c.      That the defendant's act was a cause of plaintiff's harm; and

    d.      That defendant's conduct was not justifiable under all the circumstances.

51.      Here, the Defendant Sara Bronfman-Igtet:

    a.      intentionally blackmailed and extorted Plaintiff through her attorney John McDonough by threatening Rosales with a grievance unless Rosales dropped the class action;

22

    b.  intended that the blackmail and extortion would harm Mr. Rosales;

    c.  caused harm to Mr. Rosales as Rosales had to pay to defend the grievance and is looking at a sanction of a three-year suspension or disbarment from the practice of law in New York; and

    d.  Ms. Bronfman's conduct was not justifiable under all the circumstances.

52.  Thus far, Ms. Bronfman's blackmail and extortion scheme has cost Mr. Rosales over $20,000 in legal fees as Mr. Rosales had to hire Emery, Celli, Brinckerhoff & Abady LLP of New York, NY to defend him in front of the New York Attorney Grievance Committee.

53.  It is expected that Plaintiff will have to incur another $150,000-$200,000 to defend himself at trial in the grievance spearheaded by Defendant.

54.  Plaintiff also has the economic losses of three-years of law practice, total amount of $750,000 if he is suspended for a period of three years from practicing law in New York.

55.  The practice of gathering information on enemies and then using that information to extort and blackmail enemies is part of the habit, practice, and custom of the NXIVM racketeering enterprise. Defendant Sara Bronfman-Igtet is merely continuing the activities that she engaged in while an active member of NXIVM.

56.  Clare Bronfman's past and current attorneys, Michael Avenatti and Mark Geragos, have been named in a Federal indictment alleging blackmail and extortion in order to assist Clare Bronfman. **Exhibit 3**. Sara Bronfman-Igtet's current attorney John McDonough has been identified in previous attempt to fabricate an encounter in order to have a judge recused on a case where McDonough caused a mistrial due to the fact that

McDonough was losing the case. The current activities of the Bronfman sisters are a repeat performance of their prior conduct in the NXIVM criminal enterprise.

## III. THIRD CAUSE OF ACTION:
## TORTIOUS INTERFERENCE WITH CONTRACT

57.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

58.     The elements of Tortious Interference with Contract in New York are as follows:

      a)     the existence of a valid contract;

      b)     Defendant's knowledge of the contract;

      c)     Defendant's intentional procurement of the breach of contract; and

      d)     resulting damages

59.     Here, the Plaintiff had a contract to represent Isabella Martinez and Gabriella Leal as Lead Plaintiffs in a class action lawsuit against Defendant.

60.     Here in the instant case:

      a)     there was a client services agreement and contract that would pay Rosales attorney's fees if he successfully obtained a settlement or verdict for the class members and class representatives;

      b)     Sara Bronfman-Igtet knew about the contract for legal services and attorney's fees that Plaintiff would obtain if he successfully prosecuted the class action;

      c)     Defendant Sara Bronfman-Igtet instructed her attorney John McDonough to extort Plaintiff and threaten to disbar Plaintiff if

Plaintiff did not drop the class action lawsuit. McDonough
threatened Plaintiff that he was going to:

(1) get a copy of Plaintiff's application to the New York Bar and

(2) get Plaintiff disbarred unless Plaintiff dropped the class action
    lawsuit.

McDonough carried out his threat and also attempted to obtain
Plaintiff's private identity information through an illegal subpoena.
A grievance was filed against Plaintiff. Plaintiff had to defend
himself against that grievance. Plaintiff will have to withdraw from
representation of the class action lawsuit against Defendant Sara
Bronfman-Igtet.

d)      With total class damages expected to reach $56 Million dollars
        ($3,500 refund per student x 16,000 students), Mr. Rosales is out
        of four years of legal work and approximately $12 Million dollars
        for his firm. The percentage calculation is 21% attorney's fees.
        This is the economic loss sustained by Mr. Rosales due to
        Defendant's tortious interference with Mr. Rosales's contract.

61.     The practice of gathering information on enemies and then using that
information to extort and blackmail enemies is part of the habit, practice, and custom of
the NXIVM racketeering enterprise. Defendant Sara Bronfman-Igtet is merely continuing
the activities she engaged in while an active member of the NXIVM criminal enterprise.

62.     Clare Bronfman's past and current attorneys, Michael Avenatti and Mark
Geragos, have been named in a Federal indictment alleging blackmail and extortion in
order to assist Clare Bronfman. Sara Bronfman-Igtet's current attorney John McDonough

has been identified in previous attempt to fabricate an encounter in order to have a judge recused on a case where McDonough caused a mistrial due to the fact that McDonough was losing the case. The current activities of the Bronfman sisters are a repeat performance of their prior conduct in the NXIVM criminal enterprise.

**WHEREFORE,** Plaintiff Omar W. Rosales, seeks the following relief:

(1)    on the first cause of action against Defendant Sara Bronfman-Igtet, in an amount to be determined at trial, economic damages, punitive and/or exemplary damages, plus interest, attorneys' fees and costs, under Racketeering, 18 U.S.C. §§1962(b), 1964(c);

(2)    on the second cause of action against Defendant Sara Bronfman-Igtet, in an amount to be determined at trial, economic damages, punitive and/or exemplary damages, plus interest, attorneys' fees and costs, under New York prima facie tort;

(3)    on the third cause of action against Defendant Sara Bronfman-Igtet, in an amount to be determined at trial, economic damages, punitive and/or exemplary damages, plus interest, attorneys' fees and costs, under Tortious Interference with Contract; and

(4)    together with such other and further relief the Court may deem appropriate.

Dated: June 11, 2019

Respectfully,

/s/ Omar W. Rosales

26

Omar W. Rosales

NY Reg. No. 5513619
THE ROSALES LAW FIRM, LLC
11 BROADWAY
NEW YORK, NY 10004
(646)  405-6369 TEL
(646)  851-2271 FAX
www.owrosales.com
omar@owrosales.com

Plaintiff
PRO SE

# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---------------------------------------------------------------X

ISABELLA MARTINEZ and GABRIELLA
LEAL, Individually and on behalf of other persons
similarly situated,

                                                         Index No.: 517921/2018

                                Plaintiff,

                                           **SUBPOENA DUCES TECUM**

    -vs.-

SARA BRONFMAN-IGTET,

                                Defendant.

---------------------------------------------------------------X

## THE PEOPLE OF THE STATE OF NEW YORK

TO:   Law Firm Suites
       11 Broadway
       Suite 615
       New York, NY  10004

***Greetings:***

    **WE COMMAND YOU,** that all business and excuses being laid aside, you furnish the

below-mentioned documents to the law firm of Cozen O'Connor, 45 Broadway Atrium, Suite

1600, New York, NY 10006-3792 on the 20th day of February, 2018:

- **Copy of the Rosales Law Firm, LLC's lease or rental agreement with Law Firm Suites (or whatever that document may be named), or such other document as may exist that evidences when The Rosales Law Firm's occupancy of a rental suite at 11 Broadway began.**

## YOUR FAILURE TO ATTEND WILL RESULT IN YOU BEING GUILTY OF
## CONTEMPT OF COURT AND WILL SUBJECT YOU TO LIABILITY FOR ALL
## LOSSES AND DAMAGES SUSTAINED THEREBY TO THE PARTY AGGRIEVED

**AND RENDER YOU LIABLE TO FORFEIT FIFTY ($50) DOLLARS IN ADDITION**

**THERETO.**

Dated: New York, New York
      January 17, 2018

                                        COZEN O'CONNOR

                                        By: _Rachel Bevans_

                                        Rachel Bevans, Esq.
                                        Attorneys for Defendant
                                        45 Broadway
                                        New York, New York 10006
                                        (212) 509-9400

LEGAL\39664660\1

# EXHIBIT 2

At an IAS Term, Part 27 of
the Supreme Court of the
State of New York, held in
and for the County of
Kings, at the Courthouse,
at Civic Center, Brooklyn,
New York, on the 4th day
of September 2012

P R E S E N T :

HON. ARTHUR M. SCHACK

Justice

---

SHIRLY MILLER, by YEHUDA MILLER and
MALKA MILLER, Guardians of the Person and
Property of SHIRLY MILLER Pursuant to the Laws
of the State of Israel,

                Plaintiffs,

          - against -

HENRY F. LEWIS, DUANE READE
SHAREHOLDERS, LLC, DUANE READE INC.,
and DUANE READE GENERAL PARTNERSHIP,

                Defendants.

---

**DECISION & ORDER**

Index No. 11358/09

---

| Papers numbered 1 to 3 were read on this motion: | Papers Numbered: |
|---|---|
| Order to Show Cause/Exhibits_____ | 1 |
| Affirmation in Opposition/Exhibits_____ | 2 |
| Reply Affirmation/Exhibits_____ | 3 |

---

-1-

Case 1:19-cv-03576-MKB-RLM Document 1 Filed 06/14/19 Page 33 of 51 PageID #: 33

Defendants, in this action, by order to show cause, move for this Court's recusal alleging that this Court "openly demonstrated extreme bias and hostility towards Defendants' lead trial counsel, John J. McDonough, Esq."

The instant action involves a pedestrian who had been struck by a Duane Reade truck and suffered brain damage, blindness and partial paralysis. The case was assigned to this Court for trial on November 22, 2011 by the Jury Coordinating Part (JCP).

Prior to commencing the trial, after hearing extensive oral arguments and reviewing motion papers on numerous motions *in limine,* this Court made various rulings on the record, including unifying the trial and having the jury determine if plaintiff Shirly Miller would receive future medical care in the United States or her native Israel. This Court's decision in that regard was that the interest of justice in this matter would best be served by a unified trial because the liability and damages were inextricably bound and plaintiff suffered amnesia as to the facts surrounding the accident. Defendants themselves made the issues of liability and damages intertwined by having their independent medical examiner opine that the pedestrian "fell" on a mound of snow on a sidewalk, thereby falling head first under the rear right wheel of the truck. Plaintiffs challenged this theory, maintaining that plaintiff was struck by the front of the truck, suffering a high velocity impact to the brain rather than a crushing injury. Given the factual medical dispute which bears on liability, memory loss issues and plaintiff's inability to communicate effectively, this Court found that a unified trial was warranted.

-2-

Another motion *in limine* decided against defendants involved the motion *in limine* to

preclude the testimony of an economist, Les Seplaki, and a life-care planner, Charles

Kincaid. This motion *in limine* was denied for various reasons, including that it had

already been decided and stipulated to by defendants, in JCP, prior to the case being

assigned to this Court. This Court also determined that these experts would not be

precluded and that the jury would decide whether or not plaintiff should have been

entitled to lost wages and medical costs in the United States of America. Another motion

*in limine* concerned defendants' attempt to reopen discovery to compel plaintiff to

produce immigration documents, adjourn the trial and vacate the note of issue. That was

denied as too late since the note of issue had long been filed and the case already assigned

for trial. Another motion *in limine* concerned plaintiffs' motion to quash a subpoena

served upon Shirly Miller's immigration lawyer to produce her file and various

immigration documents. That was granted, since the subpoena called for privileged

attorney-client information, and was an improper attempt to violate the previous order of

the Court denying defendants' motion for discovery of the immigration documents in

question. These motions *in limine* were the subject of defendants' counsel's recent *ex

parte* attempt to have this Court sign orders to purportedly allow them to take an appeal.

Jury selection commenced on January 4, 2012. The trial opened on January 17,

2012. The trial, with various breaks in the proceedings, including one requested by Mr.

McDonough for medical tests and/or procedures (which this Court granted readily

without requesting any affidavits or notes from doctors) and another to accommodate two

jurors' vacation plans, continued until April 5, 2012. The trial started with ten jurors, six

regular jurors and four alternates. As the trial continued, jurors were excused because

their employers informed them that they would not continue to be paid.

On April 5, 2012, after excusing a juror who had to go back to work by April 17,

2012 to continue to be paid, only five jurors remained. The trial, if it continued, would go

beyond April 17, 2012. Therefore, with only five jurors remaining and defendants'

counsel not consenting to continuing the trial with five jurors, this Court declared a

mistrial. Immediately before the mistrial was granted and the jury was dismissed, Mr.

McDonough stated on the trial record for April 5, 2012, at p. 4, lines 5 - 7, that "the

Court's been overly nice, overly courteous [and] overly respectful to counsel and the

jury."

After the jury was dismissed, this Court asked the attorneys if they wanted this

Court to keep the case for the new trial or send it back to JCP for assignment to a

different judge. Counsel for both plaintiffs and defendants consented to have this Court

continue with the new trial because of this Court's familiarity with the case. Ultimately, a

September trial date was given for a new trial at the request of Mr. McDonough.

However, in defendants' affirmation in support of recusal, it states in ¶ 4, "[a]lthough

Justice Schack made numerous rulings that were quite adverse to Defendants during the

first trial, leading Defendants to believe that they were not being treated fairly, they had

-4-

no actual evidence of bias until the April 5th date." This Court was not biased and went out of its way to accommodate Mr. McDonough. Specifically, at the request of Mr. McDonough, this Court adjourned the testimony of defendants' neurosurgeon to allow for the needs of his schedule, allowed Mr. McDonough to visit his mother following her knee surgery and granted adjournment of the trial to accommodate Mr. McDonough's schedule. There was no bias.

On June 26, 2012, this Court was presiding over a lengthy Labor Law tort trial, having nothing to do with the *Miller* case. At that time, Mr. McDonough's co-counsel and law partner, Eric Berger, Esq., was in the courtroom at the beginning of the day. Mr. Berger was waiting to speak to this Court *ex parte* about the instant *Miller* case. With no record taken, he requested that this Court sign various orders, based upon the trial record of several of this Court's motion *in limine* rulings, in an attempt to create appealable paper. This Court asked Mr. Berger about the whereabouts of opposing counsel, made clear that this was an improper *ex parte* application and refused to sign these orders. The rules of practice forbid *ex parte* applications on matters of substance. (*See Matter of Edelman*, 86 AD3d 96 [1d Dept 2011]; NY Rules of Professional Conduct, Rule 3.5 [a] [2] [iii]).

CPLR § 5701, governing appeals to the Appellate Division from Supreme and County Courts, does not typically allow appeals from denials or granting of motions *in limine*. "The appeal from so much of the order as denied the appellant's motion in limine

-5-

is dismissed, as no appeal lies from such an order (*see Cotgreave v Public Adm'r of Imperial County [CA]*, 91 AD2d 600 [2d Dept 1982])." (*Halili v City of New York*, 253 AD2d 849 [2d Dept 1998]). "Evidentiary ruling[s], even when made in advance of trial on motion papers constituted, at best, advisory opinion which was neither appealable as of right nor by permission." (*Winograd v Price*, 21 AD3d 956 [2d Dept 2005]). "Generally, an order deciding a motion in limine is not appealable, since an order, made in advance of trial which merely determined the admissibility of evidence is an unappealable advisory ruling." (*Parker v Mobil Oil Co.*, 16 AD3d 648, 650 [2d Dept 2005], *aff'd on other grounds*, 7 NY3d 434 [2006]).

On June 26, 2012, after this Court inquired about the whereabouts of plaintiffs' counsel, Mr. Berger continued to speak to this Court off the record. His affirmation, attached to the instant order to show cause, contains misstatements about what occurred. Unfortunately, there is no record to substantiate the actual conversation and defendants' counsel fails to present any affidavits or affirmations from any witnesses to our conversation. However, plaintiffs' counsel, in his opposition to the instant order to show cause, submits an affirmation from David H. Mayer, Esq., one of the attorneys on trial before this Court on June 26, 2012. Mr. Mayer states that this Court did not use the language about Mr. McDonough that Mr. Berger alleges that this Court said and "[w]hile my case was on trial for 5 weeks, I was present in the courtroom everyday and Justice Schack conducted himself in a professional manner and was courteous to all parties,

-6-

attorneys, jurors and staff."

This Court has no bias, animus or hostility against Mr. McDonough or his firm. Indeed, as made clear by Mr. McDonough himself, on the last day of the *Miller* trial, this Court was "nice," "courteous" and "respectful to counsel."

Judge Bellacosa, for a unanimous Court of Appeals in *People v Moreno* (70 NY2d 403, 405 [1987]), instructed that "[a]bsent a legal disqualification under Judiciary Law § 14, a Trial Judge is the sole arbiter of recusal." The Court, in *Schwartzberg v Kingsbridge Hgts. Care Ctr., Inc.* (28 AD3d 465, 466 [2d Dept 2006]), held that "[i]n the absence of a legal disqualification under Judiciary Law § 14, a trial judge is the sole arbiter of the need for recusal, and his or her decision is a matter of discretion and personal conscience (*see People v Moreno*, 70 NY2d 403, 405 [1987])." In *Poli v Gara* (117 AD2d 786, 788-789 [2d Dept 1986]), the Court stated that "[t]he question of whether a Judge should recuse himself to avoid an appearance of impropriety is a matter left to the personal conscience of the court (*e.g., Matter of Johnson v. Hornblass*, 93 AD2d 732 [1d Dept 1983]; *Casterella v. Casterella*, 65 AD2d 614 [2d Dept 1978])." (*See People v Smith*, 63 NY2d 41, 68 [1984]; *Daniels v City of New York*, 96 AD3d 893 [2d Dept 2012]; *Ashmore v Ashmore*, 92 AD3d 817 [2d Dept 2012]; *Silber v Silber*, 84 AD3d 931 [2d Dept 2011]; *Irizarry v State*, 56 AD3d 613 [2d Dept 2008]; *Kupersmith v Winged Foot Gold Club, Inc.*, 38 AD3d 847 [2d Dept 2007]; *Montesdeoca v*

-7-

*Montesdeoca*, 38 AD3d 666 [2d Dept 2007]; *Tornheim v Tornheim*, 28 AD3d 534 [2d Dept 2006]).

In the instant action there are no grounds pursuant to Judiciary Law § 14 which would require this Court's disqualification. However, while this Court knows that it can continue to be fair and impartial in the instant matter, in the exercise of discretion and good conscience and to avoid the appearance of impropriety, this Court recuses itself from this action.

**<u>Conclusion</u>**

Accordingly, it is

ORDERED, that this Court recuses itself forthwith from the instant action; and it is further

ORDERED, that the instant action is transferred to the Jury Coordinating Part for assignment to another Justice, on Wednesday, September 12, 2012 at 10:00 A.M.

This constitutes the Decision and Order of the Court.

E N T E R

_____

HON. ARTHUR M. SCHACK

J. S. C.

HON. ARTHUR M. SCHACK J.S.C

-8-

# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

        - v. -

MICHAEL AVENATTI,

           Defendant.

- - - - - - - - - - - - - - - x

**INDICTMENT**

19 Cr.

**19 CRIM 373**

*JUDGE GARDEPHE*

## OVERVIEW

1.   The charges in this Indictment stem from an extortion scheme in which MICHAEL AVENATTI, the defendant, and a co-conspirator not named as a defendant herein ("CC-1"), demanded tens of millions of dollars in payments from NIKE, Inc. ("Nike"), a multinational public corporation engaged in, among other things, the marketing and sale of athletic apparel, footwear, and equipment, by threatening to cause substantial economic and reputational harm to Nike if it did not accede to AVENATTI and CC-1's demands.  Specifically, AVENATTI and CC-1 threatened to hold a press conference on the eve of Nike's quarterly earnings call and the start of the annual National Collegiate Athletic Association ("NCAA") men's college basketball tournament, at which AVENATTI would make allegations of misconduct by Nike employees, unless Nike agreed to make a payment of $1.5 million to a client of AVENATTI's ("Client-1")

in possession of information damaging to Nike, and further

agreed to "retain" AVENATTI and CC-1 to conduct an "internal

investigation" that Nike had  not requested and for which

AVENATTI and CC-1 demanded to be paid, at a minimum, between $15

million and $25 million.  Alternatively, and in lieu of such a

retainer agreement, AVENATTI and CC-1 demanded a total payment

of $22.5 million from Nike to resolve any claims Client-1 might

have and additionally to buy AVENATTI and CC-1's silence.

### RELEVANT INDIVIDUALS AND ENTITIES

2.    At all relevant times, MICHAEL AVENATTI, the

defendant, was an attorney licensed to practice in the state of

California with a large public following due to, among other

things, his representation of celebrity and public figure

clients, as well as frequent media appearances and use of social

media.

3.    At all relevant times, CC-1 was an attorney

licensed to practice in the state of California, and similarly

was known for representation of celebrity and public figure

clients, and frequent media appearances.

4.    Nike is a multinational, publicly held

corporation headquartered in Beaverton, Oregon.  Nike produces

and markets athletic apparel, footwear, and equipment, and

sponsors athletic teams in many sports, including basketball, at

various levels, including the high school, amateur, collegiate, and professional levels.

5.    Client-1 is the director and head coach of an amateur youth basketball program (the "Basketball Program") based in California.  For a number of years, the Basketball Program coached by Client-1 had a sponsorship agreement with Nike pursuant to which Nike paid Client-1's program approximately $72,000 annually.

6.    "Attorney-1" and "Attorney-2" work at a law firm based in New York and represent Nike.

7.    The "In-House Attorney" is an attorney who works for Nike.

<u>THE EXTORTION SCHEME</u>

8.    In or about March 2019, MICHAEL AVENATTI, the defendant, was contacted by Client-1, who sought AVENATTI's assistance after the Basketball Program was informed by Nike that its annual contractual sponsorship would not be renewed. AVENATTI agreed to a meeting and, upon so doing, AVENATTI wrote to CC-1 about the meeting and suggested that they work together in dealing with Nike regarding any claims Client-1 might have, due to CC-1's previous relationship with individuals at Nike.

9.    On or about March 5, 2019, MICHAEL AVENATTI, the defendant, met with Client-1.  During that meeting and in subsequent meetings and communications, Client-1 informed

3

AVENATTI, in substance and in part, that Client-1 wanted Nike to reinstate its $72,000 annual contractual sponsorship of the Basketball Program, which, as noted above, Nike had recently declined to renew.  During the meeting, Client-1 provided AVENATTI with information regarding what Client-1 believed to be misconduct by certain employees of Nike involving the funneling of illicit payments from Nike to the families of certain highly ranked high school basketball prospects.

10.  At no time during the March 5 meeting or otherwise did MICHAEL AVENATTI, the defendant, enter into a written retention agreement with Client-1, nor did AVENATTI ever inform Client-1 that CC-1 would be working with AVENATTI. Furthermore, although AVENATTI told Client-1 that AVENATTI believed he would be able to obtain a $1 million settlement for Client-1 from Nike, at no time did AVENATTI inform Client-1 that he also planned to demand payments from Nike for himself and CC-1.

11.  On or about March 12, 2019, CC-1 contacted Nike and stated, in substance and in part, that he wished to speak with Nike representatives and that the discussion should occur in person, not over the phone, as it pertained to a sensitive matter.  CC-1 also told Nike representatives that AVENATTI would accompany him to any meeting.  Nike ultimately agreed to a meeting to be held on or about March 19, 2019, and stated, in

4

# EXHIBIT 4

**MUATAZ A.**

1-2/210

668

DATE  )-29-19

PAY TO THE
ORDER OF   Rosales  Law Firm , LLC   | $ 15.00

fifteen

DOLLARS

**CHASE** 🔵
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO   SL

MP

⑆021000021⑆    2588155170668

# OMAR WEAVER ROSALES, ESQ.

14846 S Valencia
Harlingen, TX
78550
(512) 955-0579 Tel
(512) 309-5360 Fax

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  JUN 14 2019  ★

BROOKLYN OFFICE

June 11, 2019

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
ATTN: PRO SE OFFICE
225 CADMAN PLAZA EAST
BROOKLYN, NY 11201

**RE: PRO SE CIVIL LAWSUIT TO BE FILED, ROSALES V. BRONFMAN-IGTET**

Dear Pro Se Office Representative:

Attached is my lawsuit and summons. I included the original + 3 copies. I also included the Civil Cover sheet.

The Cashier's check to the District Clerk is enclosed as well. Please let me know if any additional information is required.

Regards,

/s/ OWR
Omar Weaver Rosales
Attorney-at-Law
omar@owrosales.com

1

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Omar W. Rosales

**(b)** County of Residence of First Listed Plaintiff    Cameron
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
The Rosales Law Firm, LLC
11 Broadway, Suite 615
New York, NY 10004

## DEFENDANTS

Sara Bronfman-Igtet

County of Residence of First Listed Defendant   Provence, France
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*     *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☒ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/Exchange |
| | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
18 USC Sec 1962(b); 18 USC Sec 1964(c); Racketeering

Brief description of cause:
Defendant Engaged in Racketeering, Extortion, Prima Facie Tort, Tortious Interference with Contract

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE   Hon. N. Garaufis    DOCKET NUMBER   1:18-CR-204

DATE
06/11/2019

SIGNATURE OF ATTORNEY OF RECORD
/s/ Omar W. Rosales, Pro Se

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

# CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.7 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

Case is Eligible for Arbitration ☐

I, __Omar W. Rosales, Pro Se_____, counsel for _____, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

- ☑ monetary damages sought are in excess of $150,000, exclusive of interest and costs,
- ☐ the complaint seeks injunctive relief,
- ☐ the matter is otherwise ineligible for the following reason

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

None

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

## NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)

1.) Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County?         ☐ Yes    ☑ No

2.) If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County?         ☐ Yes    ☑ No

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District?         ☐ Yes    ☑ No

c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received:                    .

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County?         ☐ Yes    ☑ No
*(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).*

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

☐ Yes                    ☑ No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

☐ Yes    (If yes, please explain    ☐ No

I certify the accuracy of all information provided above.

Signature: _____

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of New York

<table>
<tr><td>Omar W. Rosales</td><td>)<br>)<br>)<br>)</td><td></td></tr>
<tr><td>_____<br><em>Plaintiff(s)</em></td><td>)<br>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>Civil Action No.</td></tr>
<tr><td>Sara Bronfman-Igtet</td><td>)<br>)<br>)</td><td></td></tr>
<tr><td>_____<br><em>Defendant(s)</em></td><td>)<br>)</td><td></td></tr>
</table>

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Sara Bronfman-Igtet
40 Mercer St, Unit 27
New York, NY
10013
USA

Domaine des Andeols
Les Andeols
84490 Saint-Saturnin-les-Apt
France

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Omar W. Rosales
The Rosales Law Firm, LLC
1000 San Marcos, Suite 215
Austin, TX 78702
(512) 520-4919 Tel, (512) 309-5360 Fax, omar@owrosales.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

DOUGLAS C. PALMER
*CLERK OF COURT*

Date: _____          _____
                                                        *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: